Filed 8/8/13

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NICHOLAS HONCHARIW, as Trustee, etc. et al., | F065494 |
| Plaintiffs and Appellants, | (Super. Ct. No. 642200) |
| v. | |
| COUNTY OF STANISLAUS et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Stanislaus County.  William A. Mayhew, Judge.

Nicholas Honchariw for Plaintiffs and Appellants.

Porter Scott, Carl L. Fessenden, and Thomas L. Riordan for Defendants and Respondents.

-ooOoo-

## INTRODUCTION

Appellant Nicholas Honchariw filed a vesting tentative map application with the County of Stanislaus that proposed subdividing a 33.7-acre parcel into large residential lots. The Board of Supervisors of the County of Stanislaus (Board) disapproved the application. Honchariw sued the Board and won on the ground that it disapproved his "proposed housing development project" without making the written findings required by Government Code section 65589.5, subdivision (j).[1] (*Honchariw v. County of Stanislaus* (2011) 200 Cal.App.4th 1066, 1070.) Our 2011 decision ordered the superior court to issue a writ of mandate directing the Board to reconsider Honchariw's application and make written findings where appropriate. The Board's compliance with the writ resulted in its approval of Honchariw's application.

This appeal concerns Honchariw's motion for attorney fees under subdivision (k) of section 65589.5 (section 65589.5(k)), which states that the court "shall award reasonable attorney's fees and costs of suit to the plaintiff or petitioner who proposed *the housing development* …." (Italics added.) The superior court concluded that the phrase "the housing development" (1) was ambiguous and (2) was intended to include only *affordable* housing developments.[2] Because Honchariw's project was not an affordable housing development, the superior court denied the motion for attorney fees.

---

[1] Government Code section 65589.5 is officially designated the "Housing Accountability Act" (Gov. Code, § 65589.5, subd. (*o*)), but is commonly known as the Anti-NIMBY (Not-In-My-Back-Yard) law. All further statutory references are to the Government Code, unless stated otherwise.

[2] For purposes of this opinion, we use the term "affordable housing" to mean "[h]ousing for very low, low-, or moderate-income households" as that phrase is defined in subdivision (h)(3) of section 65589.5. Under that definition, at least 20 percent of the total units must be sold or rented to lower income households or 100 percent of the units must be sold or rented to moderate- or middle-income households. (§ 65589.5, subd. (h)(3).)

2.

In *Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th 1066, this court held that Honchariw's project was a "proposed housing development project" for purposes of subdivision (j) of section 65589.5. That interpretation is not controlling in this appeal because the attorney fees provision in section 65589.5(k) uses different language (i.e., "the housing development"). This slight difference in language is important because the phrase "housing development project" is defined by section 65589.5, subdivision (h)(2). (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at pp. 1072-1073.) In contrast, the phrase "housing development" is not defined by the Housing Accountability Act.

We conclude that the attorney fees provision in section 65589.5(k) is ambiguous and, therefore, we must adopt the interpretation that best effectuates the Legislature's purpose. The legislative history for the bill that added the attorney fees provision to section 65589.5(k) states that the bill strengthens current law "by requiring a court to award attorney's fees to an affordable housing developer that has had a project unfairly denied by a local agency." (See fn. 9, *post*.) Based on this and other legislative history, we interpret the attorney fees provision in section 65589.5(k) to authorize an award of attorney fees only when "the housing development" in question contains affordable housing.

From a textual perspective, we conclude the term "the housing development" contained in section 65589.5(k) refers to the housing development that is the subject of the "order or judgment" mentioned earlier in that section. That "order or judgment" is issued only in cases where a local agency has rejected an affordable housing project or emergency shelter without making the required findings or without substantial evidence to support its findings. Because the "order or judgment" referred to in the statute reaches only affordable housing and emergency shelters, it follows that the term "the housing development" used in the attorney fees provision is limited to affordable housing developments.

3.

We therefore affirm the superior court's order denying attorney fees.

**FACTS**

Honchariw proposed to divide a 33.7-acre parcel in the Knights Ferry area of Stanislaus County into eight parcels that would be used for residential purposes and one remaining parcel that would contain 12.03 acres of undeveloped land. In connection with this proposal, Honchariw submitted vesting tentative map application No. 2006-06 to the county planning commission.

In February 2009, the planning commission considered Honchariw's application and his request for an exception to the county's rule requiring that all subdivision lots be connected to a public water system whenever such a system is available. The county planning commission voted to deny Honchariw's application and the request for an exception.

Honchariw filed an administrative appeal. In March 2009, the Board voted five-to-zero to disapprove the subdivision project application and to deny the request for an exception to the rule requiring connections to an available public water system. The Board did not make any of the findings specified in subdivision (j) of section 65589.5.

Honchariw challenged the Board's disapproval by filing a petition for writ of mandamus. Honchariw, in his capacity of trustee of the Honchariw Family Trust, acted as the petitioner in the lawsuit.[3] He also acted as counsel of record for the petitioner under a contingent fee arrangement.

The superior court denied the petition, concluding that the Board was not required to make written findings under subdivision (j) of section 65589.5 when it denied the application.

_____

[3] Honchariw's declaration asserts that the trust was settled by Reverend Iwan S. Honchariw in 1991 and that Honchariw became the sole trustee when Reverend Honchariw died in 1992. The declaration further asserts that Honchariw is not a beneficiary of the trust.

4.

In November 2011, we reversed the superior court's judgment and ordered the court to issue a writ of mandate directing the Board to vacate its denial of Honchariw's subdivision project application, reconsider the application, and make certain determinations and findings in the event that it again denied the application. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at pp. 1081-1082.)

In January 2012, the superior court issued the writ of mandate and directed the Board to file a return to the writ within 90 days.[4]

In February 2012, Honchariw filed a motion for attorney fees that proposed an award of $611,400 to cover the time he had acted as the attorney for petitioner-trustee. Honchariw's calculation of the award was based on 530 hours spent on the litigation[5] multiplied by an hourly rate of $600 and adjusted (except for fee-related hours) by a multiplier of 2.0. Honchariw's declaration stated he discounted his hourly fee to $600 and compared the discounted rate to a billing rate of $925 per hour he had in the early 2000's in a matter involving Ernest & Young.

In March 2012, the Board filed its opposition to the motion for attorney fees. The Board argued that section 65589.5(k) applied only to litigation involving certain low-income or affordable housing projects and, therefore, the motion should be denied. To support its interpretation of the statute, the Board requested the superior court to take judicial notice of three items of legislative history concerning section 65589.5.

The Board also argued that Honchariw could not recover attorney fees because he simultaneously acted as the petitioner-trustee and as the attorney for the trust. As to the amount claimed, the Board asserted the fees were grossly inflated based on (1) the lack of

_____

[4] The Board's initial return was filed in April 2012 and stated that the hearing on its reconsideration of Honchariw's vesting tentative map application No. 2006-06 was set for May 15, 2012, when it would make its decision to grant or deny the application.

[5] Honchariw's claim did not include every hour he spent on the matter. His supplemental declaration asserts that he spent at least 658 hours on the case.

specificity in the hours claimed, (2) the excessive hourly billing rate, and (3) the request for a multiplier.

In late April 2012, the superior court held a hearing on the motion for attorney fees and a motion to tax costs filed by the Board.

On June 22, 2012, the superior court filed its written ruling on the motions. The court denied Honchariw's motion for attorney fees, concluding "that the attorney fee provision of Government Code section 65589.5(k) is inapplicable in this case." As a rationale for the statute's inapplicability, the court stated that the wording of section 65589.5(k) seemed to limit the recovery of attorney fees to cases involving affordable housing and emergency shelters and the legislative history confirmed such an intention.

Later in June, the Board filed a supplemental return stating that (1) in May 2012 it approved Honchariw's application in a four-to-one vote and (2) no findings were required under subdivision (j) of section 65589.5 because of the approval.

In July 2012, Honchariw filed a notice of appeal from the order denying the motion for attorney fees.

**DISCUSSION**

I.      STANDARD OF REVIEW

This appeal concerns the scope of the attorney fees provision in the Housing Accountability Act and whether, properly interpreted, reasonable attorney fees are required in cases where the proposed development does not include affordable housing.

It is well established that questions of statutory construction present issues of law subject to independent review on appeal. (E.g., *Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417.) Therefore, we will conduct an independent review of this appeal.

II.     PRINCIPLES OF STATUTORY CONSTRUCTION

A reviewing court's fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Honchariw v.*

6.

*County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073, citing *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977.)  This task begins by scrutinizing the actual words of the statute, giving them their usual, ordinary meaning.  (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476; *Honchariw v. County of Stanislaus*, *supra*, at p. 1073.)

> A.      <u>Statutory Language with a Plain Meaning</u>

When the statutory language, standing alone, is clear and unambiguous—that is, has only one reasonable construction—courts usually adopt the plain or literal meaning of that language.  (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

The "plain meaning" rule, however, does not require courts to automatically adopt the literal meaning of a statutory provision.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)  For example, when a literal construction would frustrate the purpose of the statute, that construction is not adopted.  (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 [nonliteral construction of Proposition 64 adopted based on evidence of underlying purpose and voter intent]; *Bob Jones University v. United States* (1983) 461 U.S. 574, 586 [a well-established canon of statutory construction provides that literal language should not defeat the plain purpose of the statute].)  Also, courts will not adopt a literal construction when it produces absurd consequences.  (*Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 567 [Court of Appeal's plain meaning approach to constitutional provision rejected to avoid absurdity]; see generally, Manning, *The Absurdity Doctrine* (2003) 116 Harv. L.Rev. 2387.)

*Faria v. San Jacinto Unified School Dist.* (1996) 50 Cal.App.4th 1939, 1945, set forth the foregoing exceptions to the plain meaning rule by stating:

> "The plain meaning of the words of a statute may be disregarded only when the application of their literal meaning would inevitably (1) produce absurd consequences which the Legislature clearly did not intend or (2) frustrate the manifest purposes which appear from the provisions of

the legislation when considered as a whole in light of its legislative history." (Fn. omitted.)

### B.     Ambiguous Statutory Language

When statutory language is "susceptible to more than one reasonable interpretation" (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519), it is regarded as ambiguous and there is no plain meaning. When statutory language permits more than one reasonable interpretation, courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073.)

Courts determine the apparent intent of the Legislature by reading the ambiguous language in light of the statutory scheme rather than reading it in isolation. (*Lungren v. Deukmejian*, *supra*, 45 Cal.3d at p. 735.) In other words, the ambiguous language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Ibid.*) In addition, courts may determine the apparent intent of the Legislature by evaluating a variety of extrinsic aids, including the ostensible objects to be achieved by the statute, the evils to be remedied, the statute's legislative history, and public policy. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073.)

## III.    LEGISLATIVE HISTORY OF ATTORNEY FEES PROVISION

Ordinarily, we would begin our analysis by setting forth the words in the attorney fees provision contained in the third sentence of section 65589.5(k) and then would set forth the remaining text of that subdivision to establish the context for the attorney fees provision. Here, because of the length and complexity of the language used in section 65589.5(k), we will take a chronological approach to section 65589.5(k) and begin by describing the bills and legislative history relevant to its enactment.

A.       Original Subdivision (k) of Section 65589.5

Section 65589.5 did not contain a subdivision (k) until 1999, when it was added by Senate Bill No. 948 (1999-2000 Reg. Sess.).  The initial version of subdivision (k) did not contain an attorney fees provision.  (Stats. 1999, ch. 968, § 6.)  Instead, it addressed the relief a court was required to implement if it found that a local agency failed to make certain findings supported by substantial evidence in connection with the disapproval of a project for affordable housing.

B.       Amendment Adding Attorney Fees Provision

Two years later, the Legislature enacted Assembly Bill No. 369 (2001-2002 Reg. Sess.) (AB 369), which added an attorney fees provision to section 65589.5(k).  (Stats. 2001, ch. 237, § 1.)

1.       *Report to Committee on Judiciary*

Three items of legislative history were included in the request for judicial notice that the Board filed to support its opposition to the motion for attorney fees.  One of the items was the report on AB 369 prepared for the Assembly Committee on Judiciary hearing on May 2, 2001, which included a synopsis that began:

> "*This Measure Requires A Court, When It Finds That A Local Agency Has Disapproved A Housing Development Project For Very Low, Low- or Moderate-Income Households Without Making Sufficient Findings Supported by Substantial Evidence, To Award Reasonable Attorney's Fees, Actual Damages, And Costs Of Suit To The Plaintiff.*"  (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 369 (2001-2002 Reg. Sess.) as amended April 30, 2001, p. 1.)[6]

This statement supports the conclusion that the attorney fees authorized would be limited to situations where a wrongful denial of approval involved affordable housing.

---

[6] The language authorizing an award of actual damages was subsequently eliminated from AB 369.

9.

The report also contains comments from the author of AB 369, which refer to prior amendments that strengthened the Anti-NIMBY law and then stated:

> "Unfortunately, the law still is in need of improvement. Low and moderate income housing is still being denied or saddled with so many conditions that it is effectively denied, despite the applicant's compliance with the local government's general plan, zoning and development requirements. … While an applicant is empowered to sue, it is extremely costly to litigate and current law does not permit recovery of litigation costs. Too many appropriately zoned and desperately needed housing developments are not getting built because the applicant cannot afford the cost of litigation.

> "… The intent of the bill is to hold governments accountable for their actions if the following is true: the low and moderate income housing development application is in compliance with current local government standards and the local government denies the application. To help put some teeth into the affordable housing law, AB 369 provides that a prevailing plaintiff who is wrongfully denied warranted approvals for affordable housing construction to receive reasonable attorney fees, actual damages, and costs." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 369 (2001-2002 Reg. Sess.) as amended April 30, 2001, pp. 2-3.)

The author's statement about the intent of AB 369 specifies that one of the conditions for the recovery of attorney fees is that "the low and moderate income housing development" complies with local standards. This statement of intent creates a strong, but not conclusive, inference that the attorney fees provision was intended to apply *only* to affordable housing.[7] The author's use of "if" leaves open the possibility that attorney fees might be recoverable under conditions other than those specified. In contrast, had the author used the phrase "*if and only if* the following is true," there would be no

---

[7] This analysis of intent is based on a negative implication—that is, the mention of one condition implies the exclusion of situations where the expressed condition is not present. In the field of statutory construction, the principle that the expression of one thing implies the exclusion of others is rendered in Latin as *expressio unius est exclusio alterius*. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 389.)

ambiguity of an intention to limit the award of attorney fees to cases involving affordable housing developments.[8]

The report also states that the "author and sponsor argue that the measure is an attempt to hold local governments accountable for improperly denying low-income housing projects. They argue that many projects are often denied because of 'NIMBY' fears, and state that the bill 'provides an effective remedy for applicants who otherwise cannot afford to sue and "eat" their costs …'" (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 369 (2001-2002 Reg. Sess.) as amended April 30, 2001, p. 3.) The report's description of the opponents' view of AB 369 indicates that they, like the bill's proponents, believed the attorney fees award was limited to developments involving housing for very low, low- or moderate-income households. The opponents believed the attorney fees proposed were too broad because they included moderate-income housing projects and, as a result, could allow a Fortune-500 home developer of such a project to recover costs and attorney fees from a small city if the developer prevailed in a lawsuit. Neither side took the position the bill's attorney fees provision covered housing for persons with incomes above the moderate-income range.

### 2. *Honchariw's Contentions Regarding AB 369*

Honchariw's discussion of the legislation that added the attorney fees clause to section 65589.5(k) is limited. His opening brief did not mention AB 369 or the contents of any legislative history for that bill.

Honchariw's reply brief mentions AB 369 and the report to the Assembly Committee on Judiciary relied upon by the defendants. His reply brief asserts that the report "elaborates statements of the Sponsor expressing concern about housing generally"

---

[8] "If" precedes sufficient conditions, "only if" identifies necessary conditions and "if and only if" indicates conditions that are both necessary and sufficient. (See *Carver v Lehman* (9th Cir. 2009) 558 F.3d 869, 876, fn. 12 [distinction between "if" and "only if"].)

11.

and then quotes parts of two different paragraphs from the sponsor's statement. Implicit in Honchariw's argument is that the sponsor's statements of concerns about housing generally justify inferences that override the inferences drawn from the portions of the report that directly address the conditions for an award of attorney fees. This type of argument—that general statements are a better indicator of intent than specific statements—turns the usual approach to determining intent on its head. (See Civ. Code, § 3534 [particular expressions qualify those that are general].)

### 3. Analysis for Assembly Concurrence

In addition to the legislative history presented by defendant, we will consider the last report or analysis for AB 369 available on the Legislative Counsel's official website. That analysis was prepared for the Assembly's concurrence in the Senate amendments to AB 369 and summarizes the bill as follows: "Strengthens the state affordable housing law by requiring a court to award attorney's fees to an *affordable* housing developer that has had a project unfairly denied by a local agency." (Assem. Bill Analysis, Conc. in Sen. Amend., Assem. Bill No. 369 (2001-2002 Reg. Sess.) as amended July 17, 2001, p. 1, italics added.)[9] Subsequently, the analysis stated that, as passed by the Assembly, "this bill required a court to award attorney's fees and cost of suit to a developer if the court determined that a local agency disapproved *housing for very low, low- or moderate-income families* or imposed conditions that made the development infeasible without making sufficient findings based on substantial evidence." (*Ibid.*, italics added.)

---

[9] The analysis is available at <www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0351-0400/ab_369_cfa_20010720_003828_asm_floor.html> (as of July 17, 2013). (See Eisenberg et al., California Practice Guide: Civil Appeals and Writs (2012) § 9:61.5, p. 9-22 [citing the Internet].) Analyses prepared that this stage of the legislative process often focus on the differences between the two versions of the bill. In this case, however, the analysis includes statements relevant to the scope of the attorney fees provision.

12.

The comments in the analysis reiterate the supporters' position that the bill "is an attempt to hold local governments accountable for *improperly denying low-income housing projects.*" (Assem. Bill Analysis, Conc. in Sen. Amend., Assem. Bill No. 369 (2001-2002 Reg. Sess.) as amended July 17, 2001, p. 2, italics added.) The comments also include the statement that the Senate's amendments are consistent with Assembly actions and clarify what the extraordinary circumstances are that allow a court to not award attorney's fees. (*Ibid.*)

### 4. *Summary*

The foregoing items of legislative history make clear that when the Legislature enacted the attorney fees provision in section 65589.5(k), it was concerned with the wrongful disapprovals of affordable housing projects and intended to address that problem by authorizing developers of affordable housing projects to recover reasonable attorney fees and costs of suit.

Next, we turn to the words of the statute to see if those words are compatible with the conclusions we draw from the legislative history.

## IV. TEXT OF SECTION 65589.5(k)

### A. Sentence-By-Sentence

Section 65589.5(k) contains four sentences. The most important sentence is the third because it authorizes the award of reasonable attorney fees. Next in importance is the second sentence because of the parties' disagreement about its affect on the meaning of terms used in the attorney fees provision. The first and fourth sentences are not directly involved in the interpretation of the attorney fees provision

### 1. *Relief*

The second sentence of section 65589.5(k) addresses judicial relief available for violations of the Housing Accountability Act and *requires* courts to issue certain orders with a 60-day deadline when the conditions specified exist:

"If in any action brought to enforce the provisions of this section, a court finds that the local agency disapproved a project or conditioned its approval in a manner rendering it infeasible for the development of an emergency shelter, or housing for very low, low-, or moderate-income households, including farmworker housing, without making the findings required by this section or without making sufficient findings supported by substantial evidence, the court shall issue an order or judgment compelling compliance with this section within 60 days, including, but not limited to, an order that the local agency take action on the development project or emergency shelter." (§ 65589.5(k).)

This sentence's length (it contains over a hundred words) and structure present complexities, a few of which we must resolve to decide this case. The most important complexity concerns whether the project referred to in the phrase "disapproved a project" means the disapproval of *any* housing development or, alternatively, is limited by the subsequent prepositional phrase to projects "for the development of an emergency shelter, or housing for very low, low-, or moderate-income households .…" (§ 65589.5(k).)[10]

_____

**10** During oral argument, Honchariw asserted the phrase "disapproved a project" was meant to include *any* project and was not limited to affordable housing projects by the prepositional phrase in question. Honchariw referenced the word "or" in the text "disapproved a project *or* conditioned its approval in a manner rendering it infeasible" (§ 65589.5(k), italics added), and argued the affordable housing language applied only to conditional approvals—that is, the text following the word "or." We reject this statutory interpretation because the legislative history contains descriptions of the attorney fees provision that expressly connect the affordable housing limitation to disapproved projects. For example, the synopsis in the report on AB 369 to the Assembly Committee on Judiciary provides: "*This Measure Requires A Court, When It Finds That A Local Agency Has Disapproved A Housing Development Project For Very Low, Low- Or Moderate-Income Households Without Making Sufficient Findings Supported By Substantial Evidence, To Award Reasonable Attorney's Fees, Actual Damages, And Costs Of Suit To The Plaintiff….*" (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 369 (2001-2002 Reg. Sess.) as amended April 30, 2001, p. 1, underlining added.) Because the legislative history is persuasive, we need not resort to an analysis of the "last antecedent rule" and its exceptions in an effort to determine the Legislature's intent. (See *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743-744 [the last antecedent rule and other principles of statutory construction are merely tools to aid court in identifying legislative intent].)

14.

## 2. *Retained Jurisdiction and Attorney Fees*

The third sentence of section 65589.5(k) addresses two topics. First, it directs the court to retain jurisdiction so that it can enforce the relief granted in its order or judgment. Second, it directs the court to award reasonable attorney fees unless it finds that extraordinary circumstances justify denying the award. The text of the third sentence reads:

> "*The court* shall retain jurisdiction to ensure that its order or judgment is carried out and *shall award reasonable attorney's fees and costs of suit to the plaintiff or petitioner who proposed the housing development* or emergency shelter, except under extraordinary circumstances in which the court finds that awarding fees would not further the purposes of this section." (§ 65589.5(k), italics added.)

In this appeal, the question is whether Honchariw qualifies as "the plaintiff or petitioner who proposed *the housing development* .…" (Italics added.) There is no dispute that Honchariw (1) was the applicant for a proposed residential development and (2) was the petitioner who filed and prevailed on the petition for a writ of mandamus.[11] Consequently, the dispute ultimately concerns whether the statutory phrase "the housing development" covers Honchariw's development project, which proposed subdividing land into residential lots and did not include affordable housing.

### B. Analysis of Attorney Fees Provision

The attorney fees provision states that the court "shall award reasonable attorney's fees and costs of suit to the plaintiff or petitioner who proposed the housing development or emergency shelter, except under extraordinary circumstances .…" (§ 65589.5(k).) Our consideration of how the term "the housing development" should be applied in this

---

[11] The superior court's analysis did not reach the exception for extraordinary circumstances. Consequently, we do not consider whether that exception provides an alternate justification for the denial of attorney fees.

case leads us to discuss some general points relevant to the interpretation of the attorney fees provision before reaching more specific textual issues.

### 1. Use of Undefined Term

The third sentence of section 65589.5 uses the term "housing development," which is not defined by the Housing Accountability Act. In contrast, the term "housing development project" is expressly defined by subdivision (h)(2) of section 65589.5 to mean a use consisting of (A) residential units only, (B) mixed-use developments containing residential and certain nonresidential uses, or (C) transitional or supportive housing.[12] Because the Legislature had the statutorily-defined "housing development project" available and chose not to use it in the third sentence of section 65589.5(k), an inference is created that the Legislature did not intend the term "housing development" to be interpreted to mean "housing development project." (See Code Civ. Proc., § 1858 [in construing a statute, judges should not insert what the legislature has omitted].) Consequently, we will not regard the definition of "housing development project" as controlling. Instead, we will treat it as one possible way to interpret the statutory term "the housing development."

### 2. Use of the Definitive Article "the"

The third sentence of section 65589.5(k) states that the court "shall award reasonable attorney's fees and costs of suit to *the* plaintiff or petitioner who proposed *the* housing development ...." (Italics added.) The Legislature's use of the definitive article

---

[12] This broad statutory definition is not restricted to affordable housing. We relied on this statutory definition in *Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th 1066, to conclude that Honchariw's project was a "proposed housing development project" for purposes of subdivision (j) of section 65589.5 and, thus, entitled to the procedural protections contained in that subdivision. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at pp. 1072-1073.) Our conclusion that Honchariw's project is covered by subdivision (j) of section 65589.5 and is not covered by the attorney fees provision in section 65589.5(k) is rooted in the differences in the statutory language.

"the" is significant because the definite article "the" refers to a specific person or thing. (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1398.) In contrast, use of the indefinite articles "a" or "an" signals a general reference. (*Ibid.*)

The Legislature's two uses of "the" indicate it was referring to a specific type of petitioner and a specific type of "housing development." To illustrate this point, the attorney fees provision would have had a different, broader meaning if it awarded fees to "*a* petitioner who proposed *a* housing development" or "*a* petitioner who proposed *any* housing development." The identity of the specific type of petitioner and the specific type of housing development is not revealed in the language of the attorney fees provision itself. For instance, this is not a statute that uses the term "prevailing plaintiff" or an equivalent concept to identify the specific type of plaintiff who may recover attorney fees. Because it is unreasonable to infer that the Legislature intended local taxpayers to pay for the attorney fees of plaintiffs who lose their lawsuit, we conclude that the attorney fees provision in the third sentence of section 65589.5(k) is ambiguous on its face because it does not identify the particular type of plaintiff or the particular type of housing development to which it refers. Therefore, we will look beyond the words of the third sentence for indications that its phrase "*the* plaintiff or petitioner who proposed *the* housing development" (italics added) does not include all plaintiffs or all housing developments.

### 3. *Possible Interpretations*

When a court determines that statutory language is ambiguous, the sentence in question "must be read not in isolation but in light of the entire statutory scheme." (*Lungren v. Deukmejian*, *supra*, 45 Cal.3d at p. 735.) In addition, courts may ascertain the intent of the Legislature by looking to the ostensible objects to be achieved by the statute, the evils to be remedied, the statute's legislative history, and public policy. (*Honchariw v. County of Stanislaus*, *supra*, 200 Cal.App.4th at p. 1073.)

17.

The entire third sentence of section 65589.5(k) states: "The court shall retain jurisdiction to ensure that *its order or judgment* is carried out and shall award reasonable attorney's fees and costs of suit to *the plaintiff or petitioner who proposed the housing development* or emergency shelter, except under extraordinary circumstances in which the court finds that awarding fees would not further the purposes of this section." When the attorney fees provision is placed in the context of the entire sentence, it appears that "*the* plaintiff or petitioner who proposed *the* housing development" (italics added) is the plaintiff or petitioner who proposed the housing development that is the subject of "its order or judgment"—that is, the order or judgment entered by the court.

This conclusion leads to the next new question: What order or judgment? The Legislature used the phrase "its order or judgment" immediately after a sentence that specifies the circumstances in which "the *court shall issue an order or judgment compelling compliance with this section within 60 days* …." (§ 65589.5(k), italics added.) Thus, it is reasonable to interpret the phrase "its order or judgment" in the third sentence of section 65589.5(k) to refer to the "order or judgment" issued by the court pursuant to the second sentence of section 65589.5(k).

This interpretation explains the absence of an express requirement that the plaintiff or petitioner be a prevailing or successful party. Because *the* plaintiff or petitioner and *the* housing development are the plaintiff or petitioner and the housing development referred to in the order or judgment, it naturally follows such plaintiff or petitioner authorized to recover attorney fees was a prevailing party.

The last step of our statutory analysis is to determine whether the second sentence of section 65589.5(k) can be interpreted so that the phrase "an order or judgment compelling compliance with this section" is limited to developments involving affordable housing. The answer to this question depends on whether a long prepositional phrase in the second sentence is read to modify both "disapproved a project *or* conditioned its approval" or, alternatively, is read to modify only "conditioned its approval" and is not

18.

concerned with project disapprovals.  The former reading can be described as a parallel construction.

We conclude that either interpretation is possible.  The second sentence of section 65589.5(k) can be read as stating:  If "a court finds that the local agency disapproved a project … without making the findings required by this section …, the court shall issue an order or judgment compelling compliance with this section within 60 days …."  Under this reading the phrase "disapproved a project" would not be limited by the prepositional phrase included in the following interpretation and, thus, the resulting "order or judgment" would appear to cover any type of project, not just projects containing affordable housing.

The following interpretation of the second sentence of section 65589.5(k) also is reasonably possible:  If "a court finds that the local agency disapproved a project … *for the development of an emergency shelter, or housing for very low, low-, or moderate-income households, including farmworker housing*, without making the findings required by this section or without making sufficient findings supported by substantial evidence, the court shall issue an order or judgment compelling compliance with this section within 60 days …."  The italicized clause, which was omitted from the other interpretation, would limit the type of project referenced in the second sentence to projects that include affordable housing and, therefore, would limit the resulting "order or judgment" to those concerning projects that include affordable housing.

Because the language used in section 65589.5(k) is reasonably susceptible to both of these interpretations, we conclude the language is ambiguous.  To resolve this ambiguity, we will turn to the legislative history to see which interpretation is consistent with the purpose of the legislation and the intent of the Legislature.

As we previously discussed, the legislative history for AB 369 supports the view that the Legislature intended to limit the attorney fees provision to lawsuits involving

19.

affordable housing.  For example, one item of legislative history summarized AB 369 as follows:

> "Strengthens the state affordable housing law by requiring a court to award attorney's fees to an *affordable* housing developer that has had a project unfairly denied by a local agency."  (Assem. Bill Analysis, Conc. in Sen. Amend., Assem. Bill No. 369 (2001-2002 Reg. Sess.) as amended July 17, 2001, p. 1, italics added.)

Therefore, of the possible interpretations of section 65589.5(k), we conclude the legislative intent and purpose is best effectuated by a construction that limits the award of attorney fees to cases involving affordable housing developments.  Stated in terms of the statutory language, the phrase "the housing development" in the attorney fees provision refers to "a project … for the development of … housing for very low, low-, or moderate-income households."  (§ 65589.5(k).)

## DISPOSITION

The order denying Honchariw's motion for attorney fees is affirmed.  Respondents shall recover their costs on appeal.

_____
Franson, J.

WE CONCUR:


_____
Gomes, Acting P.J.


_____
Poochigian, J.