Filed 10/13/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| In re C.L., a Person Coming Under the Juvenile Court Law. | C097911 |
| AMADOR COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.L., <br><br> Defendant and Appellant. | (Super. Ct. No. 22DP00857) |

APPEAL from a judgment of the Superior Court of Amador County, Renee C. Day, Judge. Reversed with directions.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory G. Gillott, County Counsel, and Lesley C. Barlow, Deputy County Counsel, for Plaintiff and Respondent.

1

Appellant R.L., presumed father (father) of minor C.L. (the minor), appeals from the juvenile court's order terminating father's parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395; all further undesignated statutory references are to the Welfare and Institutions Code.) The minor's mother (mother) is not a party to this appeal.

The minor was removed from his parents through a protective custody warrant under section 340. Father contends the Amador County Department of Social Services (the department) failed to comply with the initial inquiry requirements of California law implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) because the department did not inquire of extended family members as to the minor's Indian ancestry when he was removed.

We agree with father and hold that the duty to inquire of extended family members applies when removal is made via a section 340 protective custody warrant. Because the department failed to comply with this duty, remand is required. Remand is also required because father stated that his great-grandmother was full-blooded Cherokee at the detention hearing, triggering a duty of further inquiry into the minor's Indian ancestry. This further inquiry duty was not satisfied. We conditionally reverse the order terminating parental rights.

FACTUAL AND PROCEDURAL BACKGROUND

The minor was removed via protective custody warrant based on a failure to thrive diagnosis and his parents' refusal to take him to a hospital to be treated for an infection. The department filed a dependency petition on behalf of the minor, alleging he fell within the meaning of section 300, subdivision (b) (failure to protect). According to the detention report filed with the petition, the social worker asked the minor's parents if they had any known Indian ancestry and mother stated that father's family " 'has Cherokee but not enough to count and nothing to back it up. [The minor] would only be like 1/32 if not less.' " The social worker concluded that the minor did not "meet the criteria to be

2

eligible for membership in an Indian tribe, as he is not a member of a tribe nor is he the biological child of a member of an Indian tribe."

At the detention hearing, the court (Judge J.S. Hermanson) asked both parents whether they were aware of any Indian ancestry. Mother responded that she wasn't sure, and father responded that his great-grandmother was full-blooded Cherokee but stated this couldn't be verified by any records. The court found a prima facie case to detain the minor from his parents. The court's minute order indicated the court found ICWA may apply, while its completed finding and orders after detention hearing form indicated it found no reason to believe or know that the minor is an Indian child and ICWA does not apply. No additional inquiry regarding the minor's Indian ancestry was made.

For purposes of the jurisdictional and dispositional hearings, the department reported that ICWA did not apply. Following the dispositional hearing, the court (Judge Renee C. Day) found no reason to know the child is an Indian child. At the selection and implementation hearing, the court (Judge Renee C. Day) found the minor likely to be adopted and terminated parental rights.

DISCUSSION

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Those problematic practices were due to "a lack of culturally competent State child-welfare standards for assessing the fitness of Indian families; systematic due process violations against both Indian children and their parents during child-custody procedures; economic incentives favoring removal of Indian children from their families and communities; and social conditions in Indian country." (81 Fed.Reg. 38778, 38780 (June 14, 2016).) The goal of ICWA is to "protect the best interests of Indian children and to promote the stability and security of

Indian tribes and families." (25 U.S.C. § 1902.) To meet that goal, ICWA establishes minimum standards for removal of Indian children from their families. (*Ibid.*) A threshold matter in a dependency proceeding is determining whether the child is an Indian child. Under ICWA, an " 'Indian child' " is a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

California law implementing ICWA imposes requirements to protect the rights of Indian children and their families and tribes. (§§ 224-224.6.) In particular, the juvenile court and the social services department have an " 'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), quoting § 224.2, subd. (a).) "The duty to inquire consists of two phases — the duty of initial inquiry and the duty of further inquiry." (*Ricky R.*, at p. 678.) Father's argument concerns both phases. We begin with the initial inquiry.

I.      *Initial Inquiry*

California's juvenile dependency statutes allow the state to take custody of juveniles in advance of a detention hearing in limited situations, both with and without a warrant. (See, e.g., §§ 305, 305.6, 306, 340.) The parties dispute the extent of inquiry required under California's ICWA statutes when the child is removed via protective custody warrant, specifically whether the county welfare department needs to ask extended relatives whether the child has any Indian ancestry. Because this dispute requires the interpretation of statutory language, we begin with the rules governing statutory construction.

Questions of statutory construction present issues of law subject to independent review on appeal. (*Honchariw v. County of Stanislaus* (2013) 218 Cal.App.4th 1019, 1026.) We begin with the statutory language because it is generally the most reliable indication of legislative intent, and if the statutory language is unambiguous, we usually

4

adopt the plain meaning of the statute. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 45.) This "plain meaning" rule does not require us to automatically adopt the literal meaning of a statutory provision. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) "For example, when a literal construction would frustrate the purpose of the statute, that construction is not adopted." (*Honchariw*, at p. 1027.) Instead, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) In addition, "[r]emedial statutes should be broadly and liberally construed to promote the underlying legislative goals." (*Estate of Stoker* (2011) 193 Cal.App.4th 236, 242.)

Here, the text at issue appears in section 224.2, subdivisions (a) and (b). Section 224.2, subdivision (a) establishes the affirmative and continuing duty of the county welfare department and the court to inquire whether a child for whom a detention petition has or may be filed is or may be an Indian child. Subdivision (a) goes on to specify that this duty to inquire begins with the initial contact and includes asking the party reporting child abuse or neglect whether that party has any information that the child may be an Indian child.

Section 224.2, subdivision (b) consists of two sentences. The first sentence provides that the county welfare department has the duty to inquire whether the child is an Indian child if the child "is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 or county probation department pursuant to [s]ection 307." (§ 224.2, subd. (b).) The second sentence reads as follows: "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)

Father contends that the inquiry definition — specifically, the requirement to ask extended family members — applies as part of the department's initial inquiry where the child is detained through a protective custody warrant. The department counters that such inquiry is required only when the child is placed in temporary custody under section 306, and that did not occur here. This issue reflects a split within the Courts of Appeal that is under review by the California Supreme Court.

Early decisions from the Court of Appeal, Fourth Appellate District aligned with father, holding that the duty of initial inquiry in section 224.2, subdivision (b) "applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678; see also *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742.) The California Rules of Court also aligned with father: California Rule of Court, rule 5.481(a)(1) requires inquiry of extended family as to whether a child is Indian in every case where a child has been removed from parents.

Nevertheless, drawing from a concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342 (*Adrian L.*), certain panels from the Court of Appeal, Fourth Appellate District, Division Two have departed from these early decisions and California Rules of Court, rule 5.481. (*In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 (*Robert F.*); *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 (*Ja.O.*); *In re Andres R.* (2023) 94 Cal.App.5th 828 (*Andres R.*).) According to this line of cases, the duty to inquire of extended family members about a child's Indian status applies if the child was placed into temporary custody without a warrant pursuant to section 306 or 307 but does not apply if the child was taken into custody pursuant to a warrant under section 340. (*Robert F.*, at p. 497; *Ja.O.*, at pp. 677-678; *Andres R.*, at p. 842; see *Adrian L.*, at pp. 357-358 (conc. opn. of Kelley, J.).) Thus, under *Robert F.*, *Ja. O.*, and *Andres R.*, there are two types of initial inquiries where a child is removed before a detention hearing: (1) an expanded inquiry

6

that applies to children removed without a warrant and (2) a more limited inquiry that applies to children removed with a warrant.

Two members of a different panel of the Court of Appeal, Fourth Appellate District, Division Two reached the opposite conclusion in *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted September 27, 2023, S281442 (*Delila D.*).[1]  They held "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from [the] home." (*Delila D.*, at p. 962.)  After providing an extensive review of the legislative history of section 224.2, the two-member panel considered the holding of *Robert F.* to be "contrary to both the letter and spirit of [the legislation that enacted section 224.2]." (*Delila D.*, at p. 962.)  One panel of the Court of Appeal, First Appellate District, Division Two and another of the Court of Appeal, Fifth Appellate District have agreed with *Delila D.*  (*In re V.C.* (2023) 95 Cal.App.5th 251; *In re Jerry R.* (2023) 95 Cal.App.5th 388.)

We find *Delila D.*'s analysis persuasive.  Section 306, subdivision (a)(1) authorizes a social worker to receive and maintain custody of a child who is described in section 300 and has been delivered by a peace officer.  The *Robert F.* line of cases insists this authority does not cover the situation in which a child is detained via protective custody warrant under section 340.  In our view, the *Robert F.* interpretation is overly literal and narrow.  As *Delila D.* explains, section 340, subdivision (c) specifically requires a child detained via warrant to be delivered to a social worker for temporary custody, and section 306 then dictates the social worker's duties with respect that custody.  (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 971-972, review granted.)  Thus, we agree with *Delila D.*'s conclusion that the reference in section 224.2, subdivision (b) to "temporary custody 'pursuant to [s]ection 306' is better read as including children who,

---

[1]     The third panel member dissented based on his concurrence in *Robert F.*  (*Delila D.*, *supra*, 93 Cal.App.5th at pp. 977-981 (dis. opn. of Miller, J.).)

though initially removed by protective custody warrant, are then delivered or placed into the department's custody pending a detention hearing." (*Delila D.*, at p. 973.)

The *Robert F.* line of cases also maintains that a dichotomy between inquiries following removals via warrant and those following warrantless removals "makes sense" "because warrantless detentions trigger time-sensitive ICWA-related requirements" in section 306, subdivision (d) that are "otherwise inapplicable" to children removed by protective custody warrant. (*Ja.O.*, *supra*, 91 Cal.App.5th at p. 681, review granted; see *Robert F.*, *supra*, 90 Cal.App.5th at p. 501, review granted; *Andres R.*, *supra*, 94 Cal.App.5th at p. 851.) We agree with Justice Slough's rejection of this argument in her concurring opinion in *Andres R.* Section 306, subdivision (d) "requires social workers to immediately notify the tribe if they know or have reason to believe the child they have taken into temporary custody falls within the tribe's exclusive jurisdiction under ICWA. (§ 306, subd. (d).)" (*Andres R.*, at p. 861 (conc. opn. of Slough, J.).) This requirement applies to children removed by warrant and held in the department's custody before the detention hearing and "*doesn't* justify importing different treatment into our interpretation of section 224.2[, subdivision ](b)." (*Ibid.*)

*Delila D.* expresses the opinion that practically speaking, "[t]here is no . . . difference between children taken by warrant and those taken without a warrant . . . so there is no reason to distinguish between them for ICWA inquiry purposes." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 972, review granted.) We agree and add that this lack of practical difference is demonstrated by the legislative history of section 340, subdivisions (b) and (c). Section 340, subdivisions (b) and (c) were added by Assembly Bill No. 1401 of the 2017-2018 Regular Session (Assembly Bill No. 1401) and became effective January 1, 2018, one year before section 224.2 became effective.

Before 2018, existing California statute allowed social workers and police officers to take a child into custody without a warrant and authorized a court to issue a protective custody warrant only after a dependency petition had been filed. (Sen. Rules Com., Off.

8

of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1401 (2017-2018 Reg. Sess.) as amended Aug. 23, 2017, p. 4; see, e.g., §§ 340, subd. (a), 305, 306.) But the case of *Calabretta v. Floyd* (9th Cir. 1999) 189 F.3d 808 left some social workers reluctant to exercise their authority without a warrant because the court held that a social worker and a police officer were not entitled to qualified immunity under the facts of a particular investigation of child abuse. (*Id.* at pp. 817, 820; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1401, *supra*, as amended Aug. 23, 2017, p. 5.) Additionally, there was a concern that removing a child without a warrant might lead to "more difficult and potentially dangerous situations." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1401 (2017-2018 Reg. Sess.) as amended Apr. 19, 2017, p. 4.) Thus, the goal of Assembly Bill No. 1401 was to allow social workers to perform their existing authority with the protection of a court warrant.

In enacting section 340, subdivisions (b) and (c), the Legislature also indicated its intention that children taken into custody through warrant be treated the same as those taken into custody without a warrant. Specifically, the Legislature required that a child removed via warrant be delivered to the social worker who would then conduct the same investigation conducted as to children removed without a warrant. (§§ 340, subd. (c), 309, subd. (a).) As the legislative history explains, Assembly Bill No. 1401 "would subject a child removed by a protective custody warrant when a petition has not been filed to these same provisions and restrictions currently in place for a child in temporary custody." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1401, *supra*, as amended Apr. 19, 2017, p. 5.) The Legislature expressly extended those same provisions to children removed by warrant after a petition has been filed. (§ 340, subds. (a), (c).) *Andres R.* discerns that the language in section 340, subdivision (c) requiring social workers to conduct section 309 investigations of children removed by protective custody warrant shows that such language is necessary to trigger the social worker's next steps

9

but is lacking here with respect to the duty to inquire of extended family members. (*Andres R.*, *supra*, 94 Cal.App.5th at p. 851.) We disagree.

The legislative history of section 340, subdivision (c) indicates that "what happens [or what would happen] to a child after [being] taken into protective custody" was "arguably unclear." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1401 (2017-2018 Reg. Sess.) as introduced Feb. 17, 2017, p. 5.) This statement supports nothing more than ambiguity, particularly in light of the text added by Assembly Bill No. 1401 requiring delivery of children removed via warrant to the social worker. Such ambiguity invites us to interpret the text based on the overall purpose of section 224.2 and the remedial purpose of ICWA and its implementing state provisions. (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [if statutory language supports more than one reasonable interpretation, courts may consider statute's purpose, legislative history, and public policy].)

As to the purpose of section 224.2, we agree with *Delila D.*'s conclusion that section 224.2 was intended to expand the scope of initial inquiry beyond the parents. (*Delila D.*, *supra*, 93 Cal.App.5th at p. 974, review granted.) We further supplement that conclusion by providing the analysis *Andres R.* claims *Delila D.* is missing. (*Andres R.*, *supra*, 94 Cal.App.5th at p. 851.) Section 224.2 became effective January 1, 2019, and was added by Assembly Bill No. 3176 of the 2017-2018 Regular Session (Assembly Bill No. 3176). (Stats. 2018, ch. 833, § 5.) We agree with *Robert F.* that "the legislative history [of Assembly Bill No. 3176] shows that the Legislature intended to track federal guidelines for implementing ICWA (the Bureau of Indian Affairs (BIA) guidelines), which recommend initial inquiry of extended family members in emergency situations . . . ." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 502, review granted; see U.S. Dept. of the Interior, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) (BIA guidelines), p. 28, available at <https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf> [as of

10

October 13, 2023] archived at: <https://perma.cc/P5GD-CQKQ>.)  But we disagree with *Robert F.*'s conclusion, and the concurring opinion in *Adrian L.*, that those emergency situations do not include situations in which a child is removed through a protective custody warrant.  (*Robert F.*, at p. 503; *Adrian L.*, *supra*, 86 Cal.App.5th at pp. 363-364 (conc. opn. of Kelley, J.).)

We begin by noting that minimizing separation of Indian families and maximizing early placement of Indian children with extended family, other members of the child's Indian tribe, or other Indian families is the resounding preference of ICWA and of the ICWA regulations that the BIA guidelines interpret.  (81 Fed.Reg., *supra*, at p. 38782; BIA, "Frequently Asked Questions, Bureau of Indian Affairs, Final Rule: Indian Child Welfare Act (ICWA) Proceedings" (June 17, 2016), p. 4, available at <https://www.bia.gov/sites/default/files/dup/assets/as-ia/raca/pdf/idc1-034295.pdf> [as of October 13, 2023] archived at: <https://perma.cc/VWN7-JZGL>.)  This placement preference reflects "[f]ederal policy that, where possible, an Indian child should remain in the Indian community."  (*Miss. Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 37.)  Thus, identification of a child's Indian community early on is paramount.

The legislative history indicates the Legislature sought to implement not only the BIA guidelines that *Robert F.* identifies but also, and more fundamentally, the federal regulations that those guidelines interpret.  (Assem. Com. on Human Services, Analysis of Assem. Bill No. 3176 (2017-2018 Reg. Sess.) as introduced Apr. 2, 2018, p. 1; Sen. Com. on Judiciary, Analysis of Assembly Bill No. 3176 (2017-2018 Reg. Sess.) as amended June 18, 2018, p. 1.)  Those regulations provide standards that apply to emergency proceedings and define those proceedings to "mean[] and include[] any court action that involves an emergency removal or emergency placement of an Indian child."  (25 C.F.R. §§ 23.113, 23.2.)  *Robert F.* insists the Legislature understood the distinction between emergency removals and other removals because "[s]ection 306 declares that removal of an Indian child under that section ' "shall be considered an emergency

11

removal under" federal law,' but section 340 contains no reference to emergency removals." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 503, review granted.) Thus, according to *Robert F.*, the Legislature clearly understood that section 340 does not provide for emergency removals. This logic fails for two reasons.

First, the Legislature describes the order detaining a child at a detention hearing to also be "an emergency removal" under federal law. (§ 319, subd. (i); see also § 224.1, subd. (*l*) [defining the § 319 initial petition hearing as an emergency proceeding].) This language undermines the conclusion that a removal under section 340 is not an emergency removal under ICWA or, at a minimum, shows that the ICWA statutes may require judicial construction to conform to their spirit. (*People v. Warren* (2018) 24 Cal.App.5th 899, 908 [we look to the entire statutory scheme and " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences" ' "].)

And second, the BIA explained that these emergency proceedings are those that "occur without the full suite of protections in ICWA" and that the emergency proceeding standards are "substantially similar to the emergency removal provisions of many states," specifically listing Virginia Code section 16.1-251, which provides for an ex parte emergency removal order through sworn testimony before a judge. (81 Fed.Reg., *supra*, at p. 38794.)

We conclude that a removal under section 340 constitutes an emergency proceeding under the ICWA regulations that Assembly Bill No. 1367 sought to implement: the removal occurs without the full suite of ICWA protections and covers situations involving substantial danger to the child. (§ 340, subds. (a), (b)(2)-(3).) *Robert F.* and *Ja.O.* express the view that the showing required under section 340, subdivision (b) is weaker than that required under section 306 because section 340, subdivision (b) does not require immediate danger or a threat of physical harm. (*Robert*

12

*F.*, *supra*, 90 Cal.App.5th at p. 501, review granted; *Ja.O.*, *supra*, 91 Cal.App.5th at p. 678, review granted.)  We disagree for two reasons.  First, section 340, subdivision (b) requires probable cause that there are no "reasonable means to protect the child's safety or physical health without removal." (§ 340, subd. (b)(3).)  This standard connotes an imminent threat to physical health and safety. (§ 340, subd. (b)(3).)  And second, even if section 340, subdivision (b) is broader than section 306, it still covers the same situations included within section 306 and the emergency situations warranting an expanded initial inquiry under the BIA guidelines.  Thus, we agree with *Delila D.*'s conclusion that "[a]pplying a narrower initial inquiry to the subset of dependencies that begin with a temporary removal by warrant frustrates the purpose of the initial inquiry." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 962, review granted.)

Applying this conclusion here, the department's initial duty of inquiry was triggered when the minor was detained via warrant and included the duty to inquire of extended family members.  The record is clear this duty was not satisfied.  Deficiencies in ICWA inquiry are reviewed for harmless error, although courts vary in their approaches for assessing prejudice. (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779-782, review granted Sept. 21, 2022, S275578; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; *In re G.A.* (2022) 81 Cal.App.5th 355, 362-365, review granted Oct. 12, 2022, S276056.)  Recently, our Supreme Court granted review in *Dezi C.* and we anticipate further clarification on this issue.  Until such time, we conclude that, given the remedial purpose underlying ICWA and related California law intended to protect third party rights, we apply the analytical framework set forth by the California Supreme Court in *In re A.R.*, and we conclude the omission in this case was prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252-254 [determining whether an error is prejudicial requires viewing the error through the lens of the remedial purpose of the law at issue].)

13

## II.     Further Inquiry

"State law requires [a juvenile] court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.'  (§ 224.2, subd. (c).)"  (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679; see 25 C.F.R. § 23.107(a) [state court must ask each participant at the start of the child custody proceeding whether the participant knows or has reason to know that the child is an Indian child].)  A reason to believe the child is an Indian child triggers the duty of further inquiry.  (§ 224.2, subd. (e).)  Such reason to believe exists when the court has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1).)

The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility.  (§ 224.2, subd. (e)(2)(A)-(C).)  After the duty of inquiry has been discharged, the juvenile court may make a finding that ICWA does not apply, if it finds "that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child."  (§ 224.2, subd. (i)(2).)

Here, the court made this initial inquiry of father at the detention hearing.  Father responded that his great-grandmother was full-blooded Cherokee, but he lacked supporting documentation.  "[T]he majority view is that a report of possible Indian ancestry, such as in this case, is sufficient to trigger the duty of further inquiry."  (*In re E.C.* (2022) 85 Cal.App.5th 123, 147.)  Our court has adopted this view.  (*In re M.E.* (2022) 79 Cal.App.5th 73, 83-84.)  The department concedes that father's statement "is

14

sufficient to trigger a duty of further inquiry" and a remand is necessary to conduct that inquiry.  We agree and accept this concession.

## DISPOSITION

The order terminating father's parental rights is conditionally reversed.  We remand the matter to the juvenile court with directions to comply with the inquiry and notice provisions of sections 224.2 and 224.3.  The court shall enter its findings on the record as to whether ICWA applies and whether the department complied with its duties under the law.  If the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.


         /s/
         MESIWALA, J.


We concur:


 /s/
HULL, Acting P. J.


 /s/
BOULWARE EURIE, J.


15