[No. S162655. Feb. 4, 2010.]

RANDALL L. GOODMAN et al., Plaintiffs and Appellants, v.
JESUS LOZANO et al., Defendants and Respondents.

COUNSEL

Silverstein & Huston, Steven A. Silverstein, Mark W. Huston and Robert I. Cohen for Plaintiffs and Appellants.

Law Offices of Craig D. Weinstein, Craig D. Weinstein; Spierer, Woodward, Corbalis & Goldberg and Stephen B. Goldberg for Defendants and Respondents.

Stephen H. Bennett, in pro. per., as Amicus Curiae.

OPINION

CHIN, J.—Under certain circumstances, a trial court must award costs and even attorney fees in favor of a "prevailing party" in an action. (Code Civ. Proc.,[1] § 1032, subd. (b).) "Prevailing party," as relevant here, includes "the party with a net monetary recovery." (§ 1032, subd. (a)(4); hereafter, section 1032(a)(4).) In this case, the plaintiffs settled with several defendants and later obtained a damage award against nonsettling defendants in an amount less than the settlement proceeds. By statute, an award in favor of a nonsettling defendant is offset by the amount the plaintiff has received from the settling defendants. (§ 877, subd. (a).) If the settlement amount is greater than the damage award, the award is entirely offset, resulting in a zero judgment. (*Syverson v. Heitmann* (1985) 171 Cal.App.3d 106, 110 [214 Cal.Rptr. 581] (*Syverson*).)

Based on the plain language of these statutes, we conclude that the plaintiffs here, ordered to take nothing against the nonsettling defendants due to the settlement offset, did not obtain a "net monetary recovery." As we explain further below, we disapprove of *Wakefield v. Bohlin* (2006) 145 Cal.App.4th 963, 982–983 [52 Cal.Rptr.3d 400] (*Wakefield*), which reached a contrary conclusion. We also distinguish the following cases that suggest otherwise: *Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609, 613 [68 Cal.Rptr.2d 224] (*Great Western*); *Zamora v. Shell Oil Co.* (1997) 55 Cal.App.4th 204, 213–215 [63 Cal.Rptr.2d 762] (*Zamora*); *Pirkig v. Dennis* (1989) 215 Cal.App.3d 1560, 1566 [264 Cal.Rptr. 494] (*Pirkig*); see also *Syverson*, *supra*, 171 Cal.App.3d at page 113 (interpreting prior version of § 1032); *Ferraro v. Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 52–53 [162 Cal.Rptr. 238] (*Ferraro*) (same).

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

## Factual and Procedural Background

In March 2000, Randall L. Goodman and Linda Guinther (collectively, plaintiffs) contracted with Jesus and Natalia Lozano to purchase a newly constructed house in Laguna Beach for $1.25 million. The house was built by AMPM Construction, a company formed by Alberto and Patricia Mobrici in 1996. The Mobricis were equal partners with the Lozanos on numerous residential construction projects; Jesus Lozano "provide[d] the money to build," and Alberto Mobrici was the "construction arm of the venture."

In 2001, plaintiffs sued the Lozanos, Alberto Mobrici, AMPM Construction, the architect, and the real estate brokers, based on construction defects in their new house. Plaintiffs sued several of the defendants for various causes of action (including negligence, fraud, breach of warranties and negligent misrepresentation), but sued only the Lozanos for breach of contract. Plaintiffs' residential purchase agreement with the Lozanos contained a bilateral provision authorizing attorney fees for a prevailing party. In 2004, Alberto Mobrici and AMPM Construction settled with plaintiffs for $200,000, and other defendants—except for the Lozanos—settled with plaintiffs for a total of over $30,000. The trial court found these settlements were made in good faith. Plaintiffs subsequently rejected the Lozanos' section 998 settlement offer of $35,000.

In 2005, a bench trial was held on plaintiffs' action against the Lozanos. The trial judge, who was not informed of plaintiffs' settlement with the other defendants, found in favor of plaintiffs and calculated a "total damage award" of just under $146,000, of which $64,000 went to plaintiffs' contract claim. After learning that the prior settlements totaled over $230,000, the judge determined that the Lozanos should receive credit for the settlements. Because the settlement amount easily surpassed the $146,000 awarded to plaintiffs, the trial judge found that plaintiffs should receive nothing by the action. Exercising his discretion under section 1032(a)(4), the trial judge determined that the Lozanos were the prevailing party because they paid nothing under the judgment. He awarded the Lozanos $132,000 in attorney fees and $12,000 in costs. Plaintiffs appealed from both the net zero judgment and the order finding the Lozanos to be the prevailing party and awarding them fees and costs.

The Court of Appeal affirmed. It expressly disagreed with the majority in *Wakefield, supra,* 145 Cal.App.4th at page 969, which held that a party who receives a damage award against a defendant but whose judgment is reduced to zero by operation of section 877, "categorically qualifies as a prevailing party" "with a net monetary recovery" under section 1032(a)(4). Construing what it found to be the plain language of section 1032(a)(4), the Court of Appeal here reasoned: "A litigant cannot actually *recover* or 'gain' anything without an *order* or a *judgment.* An award or verdict without a judgment is

merely symbolic. The fact that the litigant may have had an *award or verdict prior to a zero judgment* is meaningless for purposes of whether that litigant qualifies as 'the party with a net monetary recovery' if the award or verdict produces nothing tangible. 'Recovery,' not 'award,' is the word chosen by the Legislature." Rejecting plaintiffs' claim that they were "categorically" the prevailing party under the reasoning of *Wakefield, supra,* 145 Cal.App.4th 963, the Court of Appeal concluded that the trial court did not abuse its discretion in determining that the prevailing party were the Lozanos.

We granted review to resolve the conflict.[2]

## DISCUSSION

Generally, a trial court's determination that a litigant is a prevailing party, along with its award of fees and costs, is reviewed for abuse of discretion. (See *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94 [14 Cal.Rptr.3d 67, 90 P.3d 1223]; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) However, the issue here involves the interpretation of a statute, a question of law that we review de novo. (See *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856] (*California Teachers*).)

■ In interpreting a statute, our primary goal is to determine and give effect to the underlying purpose of the law. (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].) "Our first step is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning." (*Ibid.*) " 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*California Teachers, supra,* 28 Cal.3d at p. 698.) In other words, we are not free to "give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297]; see § 1858.) However, " 'the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' " (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 943 [64 Cal.Rptr.2d 814, 938 P.2d 876].) To determine the most reasonable interpretation of a statute, we look to its legislative history and background. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543 [67 Cal.Rptr.3d 330, 169 P.3d 559] (*Doe*).)

---

[2] Accordingly, we do not address plaintiffs' additional claims, including their claim that the trial court erred by offsetting the judgment to zero.

We begin with the language of sections 1032 and 877.

A. *Sections 1032 and 877*

█ Unless otherwise provided by statute, a "prevailing party" is entitled to recover costs in any action or proceeding "as a matter of right." (§ 1032, subd. (b); see § 1033.5, subd. (a)(10)(A)–(C) [allowable costs under § 1032 include attorney fees authorized by contract, statute, or law].) "Prevailing party" for purposes of section 1032(a)(4) is defined as including: "[1] the party with a net monetary recovery, [2] a defendant in whose favor a dismissal is entered, [3] a defendant where neither plaintiff nor defendant obtains any relief, and [4] a defendant as against those plaintiffs who do not recover any relief against that defendant." If a party recovers anything other than monetary relief and in situations not specified above, a trial court shall determine the prevailing party and use its discretion to determine the amount and allocation of costs, if any. (*Ibid.*; *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1198 [57 Cal.Rptr.2d 227] [prevailing party is "entitled to costs as a matter of right; the trial court has no discretion to order each party to bear his or her own costs"].) We are concerned with the first category of section 1032(a)(4), "the party with a net monetary recovery."

█ Also relevant to the issue here, section 877, subdivision (a), provides that if a party gives a release to "one or more other co-obligors mutually subject to contribution rights," that party's "claims against the others" may be reduced by the amount of the prior settlement. (§ 877, subd. (a).) "Section 877 establishes that a good faith settlement bars other defendants from seeking contribution from the settling defendant (§ 877, subd. (b)), but at the same time provides that the plaintiff's claims against the other defendants are to be reduced by 'the amount of consideration paid for' the settlement (§ 877, subd. (a)). Thus, while a good faith settlement cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, the nonsettling defendants obtain in return a reduction in their ultimate liability to the plaintiff." (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 873 [239 Cal.Rptr. 626, 741 P.2d 124]; see *Wade v. Shrader* (2008) 168 Cal.App.4th 1039, 1046 [85 Cal.Rptr.3d 865] (*Wade*).) As noted above (see p. 1330, *ante*), if a plaintiff's settlement completely offsets a damage award against a nonsettling joint tortfeasor or co-obligor, "it reduces the judgment to zero by operation of law." (*Syverson, supra,* 171 Cal.App.3d at p. 110.)

The Court of Appeal here followed the *Wakefield* dissent, which explained: "The common meaning of the word 'net' is 'free from all charges or deductions' or 'to get possession of: GAIN.' (Webster's Collegiate Dict. (10th ed. 1993) p. 780.) The word 'monetary' obviously means 'relating to money.'

(Webster's Collegiate Dict. (10th ed. 1993) p. 750.) The word 'recover' means 'to gain by legal process' or 'to obtain a final legal judgment in one's favor.' (Webster's Collegiate Dict. (10th ed. 1993), p. 977.) Thus, the common meaning of the phrase 'the party with a net monetary recovery' is the party who gains money that is 'free from . . . *all* deductions.' . . . [¶] A plaintiff who obtains a verdict against a defendant that is offset to zero by settlements with other defendants does not gain any money free from deductions. Such a plaintiff *gains nothing* because the deductions reduce the verdict to zero." (*Wakefield, supra,* 145 Cal.App.4th 963, 992 (dis. opn. of Mihara, J.).)

We agree with the instant Court of Appeal and the *Wakefield* dissent that the term "net monetary recovery" is clear and that we must give effect to it " 'according to the usual, ordinary import of the language employed . . . .' " (*California Teachers, supra,* 28 Cal.3d at p. 698.) The *Wakefield* dissent's interpretation of "net monetary recovery" reflects the common understanding of these words. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122 [29 Cal.Rptr.3d 262, 112 P.3d 647] ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word."].) There is nothing to suggest that the Legislature intended to define these words with a different meaning. (See *Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 63 [92 Cal.Rptr.3d 279, 205 P.3d 201].) While the *Wakefield* majority concluded that "any success in pressing . . . claims against the losing party results in a net award" (*Wakefield, supra,* 145 Cal.App.4th at p. 981), this amorphous concept of "success" is contrary to the language of section 1032(a)(4), which uses the specific term "net monetary recovery."

■ Moreover, a plain meaning interpretation of "net monetary recovery" is also consistent with the statutory language of section 877. Under section 877, subdivision (a), a plaintiff's settlement with a defendant serves to "reduce the *claims* against" the remaining codefendants. (§ 877, subd. (a), italics added; see *Reed v. Wilson* (1999) 73 Cal.App.4th 439, 444–445 [86 Cal.Rptr.2d 510] (*Reed*) ["the word 'claims' in section 877 generally refers to a claim of liability for damages and not to costs awarded to a prevailing party after a claim of liability has been adjudicated"].) Thus, any reduction for prior settlements is made *before* the entry of judgment. (See *Wade, supra,* 168 Cal.App.4th at p. 1048 ["In cases where entitlement to and the amount of the settlement credit [are] not in dispute, the nonsettling defendant may raise the issue after the verdict but before judgment so that the trial court may calculate the judgment with the settlement credit in mind."].) Accordingly, when a plaintiff's prior settlement is more than the award received at trial, the

plaintiff ultimately recovers nothing. (See *Syverson, supra,* 171 Cal.App.3d at p. 110.) In other words, the net recovery is zero.[3]

Although we conclude that the meaning of "net monetary recovery" is plain, it is helpful to look at section 1032's legislative history in light of the conflict on this issue. (See *Doe, supra,* 42 Cal.4th at p. 543.)

## B. *Section 1032's Legislative History*

In 1986, the Legislature repealed the former version of section 1032 and added it in its current form. (Stats. 1986, ch. 377, §§ 5, 6, p. 1578.) Before its repeal, former section 1032 provided that costs are allowed for either a plaintiff or a defendant "upon a judgment in his favor" in various specified actions and, in other actions not specified, the trial court might award costs in its discretion. (Former § 1032, subds. (a)–(c), as amended by Stats. 1957, ch. 1172, §1, p. 2464.) The purpose of the 1986 legislation, which was sponsored by the California Judges Association (CJA), was to streamline the rules and procedures on the award of litigation costs, which were deemed "hard to find and hard to follow." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 654 (1985–1986 Reg. Sess.) as amended July 8, 1986, p. 3 (Report on Senate Bill No. 654).)

The *Wakefield* majority concluded that the revision from "judgment" to "net monetary recovery" "makes it even easier to distinguish between a jury verdict awarding net damages to a litigant (a net recovery) and the ultimate judgment, which necessarily comes later and may reflect offsets from other parties' contributions." (*Wakefield, supra,* 145 Cal.App.4th at p. 982.) Additionally, the majority based its decision on cases interpreting the prior version of section 1032. (*Wakefield, supra,* 145 Cal.App.4th at pp. 981–982.) Ultimately, the *Wakefield* majority concluded that "net monetary recovery" is determined "without regard to settlements or other contributions from unrelated defendants or from other parties." (*Id.* at p. 982.) The Court of Appeal below, however, criticized both the *Wakefield* majority's analysis and its reliance on earlier cases. Echoing the *Wakefield* majority, plaintiffs here argue that the 1986 legislation did not break from earlier cases that had construed the prior statutory phrase (a party with "a judgment in his favor") without

---

[3] While plaintiffs are correct that a plaintiff would not necessarily get double recovery by obtaining costs from a nonsettling defendant (see *Reed, supra,* 73 Cal.App.4th at pp. 444–445), this argument misses the point. This conclusion in *Reed* does not answer the question whether plaintiffs here have a "net monetary recovery" and are entitled to costs in the first place, a question we have answered in the negative.

Moreover, we reject their contention that we must construe section 1032(a)(4) in light of Civil Code section 1717. (See *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1143 [70 Cal.Rptr.2d 769] ["Rather than focusing on who receives the net monetary award, section 1717 defines the prevailing party as the one who recovers 'a greater relief in the action on the contract.' "].)

regard to any offsets to the litigant's award (see *Ferraro, supra,* 102 Cal.App.3d at pp. 52–53; *Syverson, supra,* 171 Cal.App.3d at p. 113), and rely on the CJA's statement that its sponsored legislation was "not intended to substantively change existing law." (Rep. on Sen. Bill No. 654, *supra,* at p. 3.) We disagree with plaintiffs.

The CJA's statement above refers to the then existing law regarding "which costs are, and are not, allowable." (Rep. on Sen. Bill No. 654, *supra,* at p. 3 [legislation necessary to avoid having "to search through myriad statutes, cases and treatises in order to determine whether a particular cost item is allowable"]; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 654 (1985–1986 Reg. Sess.) as amended Mar. 31, 1986, p. 1 [lists of costs "are essentially restatements of existing law, and to a large extent are codifications of case law"].) It did not refer to the definition of a "prevailing party." The legislative history reveals instead that at the time current section 1032 was reenacted, the "existing statutes d[id] not fully explain the concept of the 'prevailing party,'" and that a "comprehensive definition" was necessary to "further eliminate confusion." (Rep. on Sen. Bill No. 654, *supra,* at pp. 1, 3.)

We conclude that the *Wakefield* dissent persuasively reasoned that the Legislature effectively rejected the holdings of *Ferraro* and *Syverson* through this 1986 legislation. (See *Wakefield, supra,* 145 Cal.App.4th 963, 994–996 (dis. opn. of Mihara, J.).) The *Wakefield* dissent first observed that the Courts of Appeal in *Ferraro* and *Syverson* found that the respective plaintiffs had failed to obtain " 'net judgment[s],' " and were " 'not entitled to recover' " any damages from the defendants due to so-called "indirect offsets" (that is, offsets from a plaintiff's settlement with other defendants). (*Wakefield, supra,* 145 Cal.App.4th at p. 995 (dis. opn. of Mihara, J.), quoting *Syverson, supra,* 171 Cal.App.3d at pp. 112–113; see *Ferraro, supra,* 102 Cal.App.3d at pp. 51, fn. 4, 52.) Nonetheless, these courts held that the respective plaintiffs had received judgments " 'in [their] favor' " within the meaning of former section 1032, subdivision (a). (*Wakefield, supra,* 145 Cal.App.4th at p. 995.)

Based on the foregoing, the *Wakefield* dissent concluded: "The Legislature's decision in July 1986, after both *Ferraro* and *Syverson,* to repeal the 'judgment in his favor' language in former section 1032 and replace it with 'the party with a net monetary recovery' in the new section 1032 can easily be seen as a rejection of the results in *Ferraro* and *Syverson. Ferraro* and *Syverson* both dealt with *indirect* offsets and characterized the results of these indirect offsets as the absence of a recovery and the absence of a '*net*' judgment. In light of *Ferraro* and *Syverson,* the Legislature's decision to use the phrase 'net monetary recovery' without any qualification that precluded consideration of indirect offsets demonstrated that the Legislature was aware that a party whose judgment was reduced to zero by indirect offsets would

not be considered 'the party with a net monetary recovery' and that the Legislature intended that the trial court not be required to designate such a party as a prevailing party." (*Wakefield, supra*, 145 Cal.App.4th 963, 995–996 (dis. opn. of Mihara, J.).) We find this analysis to be persuasive. Contrary to plaintiffs' assertion, it is not dispositive that the Legislature did not specifically reject the *Ferraro* or *Syverson* decision when it repealed and reenacted section 1032. (See *People v. Mendoza* (2000) 23 Cal.4th 896, 916 [98 Cal.Rptr.2d 431, 4 P.3d 265] [Legislature's repeal of prior statute "together with its enactment of a new statute on the same subject . . . with significant differences in language, strongly suggests the Legislature intended to change the law"].)

Indeed, those cases reaching a contrary conclusion on the import of these prerevision cases did not critically analyze section 1032's legislative history. *Pirkig*, the first decision to conclude that the 1986 legislation did not substantially change the definition of "prevailing party," and that, as such, *Ferraro* and *Syverson* were still controlling, did not rely on or provide any analysis of section 1032's legislative history. (*Pirkig, supra*, 215 Cal.App.3d at pp. 1566–1568 & fn. 5.) Other cases following *Pirkig*, including *Wakefield*, have also adopted this conclusion with little critical analysis. (*Wakefield, supra*, 145 Cal.App.4th at pp. 981–982; *Great Western, supra*, 58 Cal.App.4th at p. 613; *Zamora, supra*, 55 Cal.App.4th at pp. 214–215.) Significantly, except for *Wakefield*, none of these cases dealt with section 1032(a)(4)'s category of prevailing party ("the party with a net monetary recovery") at issue in this case.

In sum, while section 1032's legislative history does not specifically address the precise question before us, it is nonetheless consistent with the conclusion that the meaning of "net monetary recovery" (§ 1032(a)(4)) is not controlled by those cases construing the prior version of section 1032. (See *Syverson, supra*, 171 Cal.App.3d at p. 113; *Ferraro, supra*, 102 Cal.App.3d at pp. 52–53.) In that regard, as we explain below, the *Wakefield* majority also erroneously relied on the reasoning of cases following *Ferraro* and *Syverson* to conclude that settlement offsets do not affect a prevailing party determination in this context. (See, e.g., *Great Western, supra*, 58 Cal.App.4th at p. 613; see also *Zamora, supra*, 55 Cal.App.4th at pp. 213–215; *Pirkig, supra*, 215 Cal.App.3d at p. 1566.)

### C. *Settlement Offsets*

To reach its holding that a damage award that is offset to zero constitutes a "net monetary recovery," the *Wakefield* majority also relied on the broad

conclusion that " '[s]ettlements by other parties and corresponding offsets do not affect a prevailing party determination.' " (*Wakefield, supra,* 145 Cal.App.4th at p. 982, quoting *Great Western, supra,* 58 Cal.App.4th at p. 613.) *Great Western,* however, dealt with a different category of prevailing party—a cross-defendant in whose favor a cross-complaint is dismissed. (*Great Western, supra,* 58 Cal.App.4th at p. 613; see § 1032(a)(4) [prevailing party includes "a defendant in whose favor a dismissal is entered"]; *id.,* subd. (a)(2) [" 'defendant' " includes a cross-defendant]; see *Crib Retaining Walls, Inc. v. NBS/Lowry, Inc.* (1996) 47 Cal.App.4th 886, 890 [54 Cal.Rptr.2d 850].) And *Great Western* did not concern the effect of settlement proceeds under section 877 on a prevailing party determination. (See *Great Western, supra,* 58 Cal.App.4th at p. 614 [good faith settlement dismissal of a cross-complaint under § 877.6].) Thus, at the very least, *Great Western's* observation that settlement offsets do not affect a prevailing party determination is strictly dicta. Moreover, we conclude that this observation is overly broad in that the cases *Great Western* relies on—*Zamora, Pirkig,* and *Syverson*—dealt with *specific* categories of "prevailing party" under section 1032, including one that has been eliminated, and as such, their holdings do not necessarily extend to all categories defining a "prevailing party."

Based on the foregoing, we conclude that the *Wakefield* majority erred by misinterpreting the plain language of "net monetary recovery" (§ 1032(a)(4)) (see, *ante,* at p. 1334), and by concluding that settlement offsets do not otherwise affect whether a party has such a "net monetary recovery." As noted, we disapprove of *Wakefield, supra,* 145 Cal.App.4th 963, to the extent it is inconsistent with this opinion.[4]

### D. *Application*

Plaintiffs maintain that even if they are not deemed the prevailing party in this case, the Court of Appeal nonetheless erred by applying the abuse of discretion standard because the Lozanos would otherwise qualify under another mandatory category of prevailing party. (See § 1032(a)(4).) We need not address this precise contention because we conclude that the trial court

---

[4] Contrary to plaintiffs' assertion, we fail to see how this interpretation of section 1032(a)(4) would create absurd results. Our holding today is simply that a plaintiff whose damage award is offset to zero by a prior settlement does not *categorically* qualify as a prevailing party ("the party with a net monetary recovery") as a matter of law. Unless a party otherwise fits into one of the remaining three categories of prevailing party under section 1032(a)(4), a trial court will have the *discretion* to make the determination as to a prevailing party under the section.

Because we have concluded the statutory language and legislative history support this interpretation of section 1032(a)(4), it is not necessary to discuss any public policy considerations. (See *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1084 [36 Cal.Rptr.3d 650].)

did not abuse its discretion in awarding costs and attorney fees to the Lozanos.

" 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418] (*Walker*); see *Lincoln v. Schurgin* (1995) 39 Cal.App.4th 100, 105–106 [45 Cal.Rptr.2d 874]; *Slavin v. Fink* (1994) 25 Cal.App.4th 722, 726 [30 Cal.Rptr.2d 750].) Under this test, we conclude that the trial court did not abuse its discretion.

In finding the Lozanos to be the prevailing party, the trial court observed: "The plaintiffs came to this trial with substantial moneys in hand from prior settlements. Both sides acknowledged that those funds would reduce any damages proven at this trial. Plaintiffs presented evidence regarding their entire list of dozens of alleged deviations and defects. The defendants did not dispute all of these claims and, in fact, acknowledged some errors. Although the defendants suggested lower corrective costs than the plaintiffs demanded, the defendants never suggested that no damages should be found by this court. The defendants' clear and undisputed trial goal was to get a decision awarding less damages than the sum of the prior settlements. They fully achieved this objective. It is also noteworthy that the settlements were consummated well before this trial, in ample time for the plaintiffs to reassess their strategy. Furthermore, these payments were not contingent or uncollected, but had been received by the plaintiffs before they sought further recovery from the Lozanos."

The trial court, which was also the trier of fact, carefully assessed the parties' bargaining strengths and litigation objectives going into trial against the results actually achieved in this case. Because both parties recognized that the prior settlements would offset any damage award, the trial court properly considered whether plaintiffs had reasonable prospects of recovering money in excess of the settlement amount. Indeed, although plaintiffs sought damages in the amount of $550,000, the court awarded them $146,000, well below the $230,000 received in settlement. On the other hand, the Lozanos achieved their goal of proving damages in an amount less than the settlement proceeds, by which they avoided having to pay plaintiffs anything. (See *Syverson, supra,* 171 Cal.App.3d at p. 110.) Based on the foregoing, we cannot say that the trial court " 'exceeded the bounds of reason.' " (*Walker, supra,* 53 Cal.3d at p. 272.)

## CONCLUSION

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.

On March 30, 2010, the opinion was modified to read as printed above.